**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | Case No. 3:13cr6/RV |
| ) | |
| vs. ) | Pensacola, Florida |
| ) | June 17, 2013 |
| ) | 2:12 p.m. |
| ) | |
| BRANDON C. GILLREATH, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**TRANSCRIPT OF SENTENCING PROCEEDINGS**
**BEFORE THE HONORABLE ROGER VINSON**
**SENIOR UNITED STATES DISTRICT JUDGE**
**(Pages 1-33)**

**FOR THE GOVERNMENT:**          DAVID L. GOLDBERG, ESQUIRE
United States Attorney's Office
21 East Garden Street, Suite 400
Pensacola, Florida  32502

**FOR THE DEFENDANT:**          CLINTON A. COUCH, ESQUIRE
CLINTON A. COUCH, P.A.
3 West Garden Street, Suite 707
Pensacola, Florida  32502

**PROCEEDINGS**

**(Court called to order; Defendant present with counsel.)**

THE COURT:  Pursuant to notice we have sentencing scheduled at this time in Case 3:13cr006.  I think we're to begin with Brandon Gillreath.

So counsel, if you'll come down in front of the clerk's bench with the Defendant.

**(At the bench.)**

THE COURT:  Mr. Goldberg, good afternoon.

MR. GOLDBERG:  Good afternoon, Your Honor.

THE COURT:  Mr. Couch, good afternoon.

MR. COUCH:  Good afternoon, Your Honor.

THE COURT:  Mr. Couch, I'm told that you have something that you want to take up before we begin sentencing.

MR. COUCH:  Yes, Your Honor, I do.  Your Honor, I had filed a motion for appointment of experts last week based on an interview with Mr. Gillreath after we had received the Government's response to the draft PSR response that we had filed by the Defense.

During that conversation or during that interview with Mr. Gillreath, he retracted some statements he had made to Probation in my presence wherein he had indicated that he did not suffer from any sort of mental illness, disease, or defect and, in fact, indicated that he may be suffering from that, and it would be based on him being abused as a child and then

subsequently being preyed upon as he became older. And the insight that he had developed over the past few months suggested to him that he was -- he had had a diminished capacity to resist being preyed upon because he had been abused as a child.

This gives rise to a number of concerns that I had, one, that he suffered from some sort of mental disease, illness, or defect that should be considered by the Court as a mitigating factor but not necessarily a defense or a suggestion that he could not conform his conduct to the requirements of the law.

It also suggested to me that the four-level enhancement based on sadistic or masochistic behavior may be rebutted because the very definition of sadistic behavior is not the infliction of pain during the course of sexual activity, but rather the sexual gratification from the infliction of pain.

And if this were something that we could rebut through psychological or expert testimony that Mr. Gillreath derived no sexual pleasure from the infliction of pain or being present during the infliction of pain, nor did he derive any sexual gratification from pain being inflicted upon him, again, this would be something that we could rebut this enhancement.

And this is a four-level enhancement. It would have been a significant change in the Sentencing Guidelines. I had filed a motion. The Court had indicated that the motion was untimely. I filed a renewed motion and tried to urge the Court to consider that this information came to me only as recently as

the interview with Mr. Gillreath during the post-Government response to our Presentence Report.

So it's not that we knew about the enhancement, but rather we learned that there was a possible defense or a possible response to this enhancement, one that I was unaware of prior to this conversation I had with Mr. Gillreath a little over a week ago.

So I feel compelled today to tell the Court that I don't feel competent to proceed to represent Mr. Gillreath as zealously as I might otherwise be if I had the benefit of the appointment of experts in this case.

MR. GOLDBERG:  Your Honor, if I may respond?

THE COURT:  All right, Mr. Goldberg.

MR. GOLDBERG:  I believe my response would be multi-fold.  Let me start with, the reason why this -- you know, Mr. Couch is a gentleman, and he is attempting to accept blame, but the blame is the Defendant's alone through his own false statements and misdeeds.

If one looks at PSR paragraphs 52, 58, 60, 61, 98, 106, and 118, what we see is that the Defendant lied to agents upon his initial interview.  We're now being told that he lied to the United States Probation Officer, who is the Court.  And this was also a guilty plea where no mental health issues were mentioned that would have such an impact during a plea under oath before this Court.

So what happens is that the Defendant just keeps lying, and he shouldn't benefit from his own misdeeds. He's just trying to avoid the inevitable, and today he is ripe to be sentenced.

As it regards to the four-point enhancement, I have to respectfully correct my colleague, and the Eleventh Circuit has been pretty clear on this. The pain enhancement -- the S and M enhancement as determined by the Eleventh Circuit in *Hall*, 312 F.3d 1250, the Eleventh Circuit's writing says: "The circuit's precedent establishes that a sentencing enhancement for portrayal of sadistic conduct is warranted when cases involve images displaying an adult male vaginally or anally penetrating a young child. Under our precedent the four-level enhancement is warranted because such penetration would necessarily be painful."

Mr. Gillreath's level of sexual gratification is not of import for that enhancement. The Government has exhibits that show Mr. Gillreath anally penetrating a 10-to-11-year-old girl while erect, then there's oral sex, and then he ejaculates.

Even assuming arguendo that we just disregard Eleventh Circuit precedent --

**THE COURT:** Well, we can't.

**MR. GOLDBERG:** Of course. I'm just assuming for the sake of argument. Mr. Gillreath's total offense level is 45, which gets reduced to 43 by statute, by the Sentencing

Guidelines.  But if it's at 45 and you even subtract that enhancement, the 4-point enhancement to a 41 with a Criminal History Category of III, he's still looking at up to life imprisonment, so it really would not have that much of an impact.

So Eleventh Circuit does apply; but even if it doesn't, this Court is still within the realm of the same matrix for sentencing purposes.  We'd ask to proceed to sentencing.

Again, Mr. Gillreath has created this situation himself.  And although he's quite a gentleman, Mr. Couch should not have to take the bullet for it.

**MR. COUCH:**  Your Honor, if I may, this is not a question of Mr. Gillreath coming forward and saying the light was really green -- I said it was red but it was really green.

This is the admission of a -- circumstances that goes to the very soul of our humanity, recognizing that he has this problem.  People take a lifetime to develop this insight.  The fact that he did not leap upon it when he was first arrested is understandable.

The fact that he is coming to understand his situation and acknowledge that he has a much more severe problem than he first realized, again, is understandable.

And in *Hall*, we would suggest to the Court not that it ignore the Eleventh Circuit precedent, but that *Hall* can be distinguished.  In the instant case in this situation we have

known victims.  We don't have images of either unknown people or people who are beyond the reach of the Court.

We do have the ability to get information from the victims as to whether they were actually in pain.  And if this were a situation where we -- the Court is not called upon to presume that the sexual activity between an adult and a ten-year-old female would necessarily be painful, but one which could be rebutted and say in this particular case, because of the nature of the victim, the nature of the perpetrator, the nature of the instrumentality used to effect this activity, the victim was not -- if you'll forgive me, Your Honor -- not necessarily traumatized in the manner that sadomasochism describes.

THE COURT:  Well, Mr. Couch, one of the cases in the Eleventh Circuit that establishes this point of law is one of my decisions where I agree it took more to establish masochistic and sadistic behavior, but the Eleventh Circuit is pretty firm that it is in this circuit.  And you, I think, are fighting a futile battle in this circuit to claim otherwise.  So I think that would mean your defense would be futile, as Mr. Goldberg has already indicated.

Aside from that, how do you otherwise feel that he might be prejudiced?

MR. COUCH:  Your Honor, the advice to my client with regard to the obstruction charge was wrong.  My understanding of

the facts were clear; my understanding of the law was not.  I don't believe that he entered a well-counseled plea to the obstruction count, and I would like an opportunity to move to withdraw his plea to that count.

His plea -- he has been consistent with what he explained to me to be the facts.  In the course of going over the Presentence Report, I believe that I misapprehended the law.

Specifically, I understand the facts to be one where he was interviewed by law enforcement, and he answered "no" when directly asked if he had engaged in sexual activity with a child.  There is a question as to whether or not simply saying "no" is enough to obstruct.

Counsel for the Government has referred us to *Brogan v. United States*.  As I understand *Brogan*, that was a sworn interview.  As I understand the interview in the instant case, it was not sworn.  So it can be distinguished on those facts.

**THE COURT:**  Well, what you're talking about is the exculpatory "no," and I think the law at one time possibly recognized that that might be a defense to obstruction of justice.  But for purposes of Section 1001, I think in this circuit that's been conclusively established to the contrary.

And I'm looking for my notes in a pattern jury instruction because I wrote that instruction, and I think I wrote that into the commentary.

**MR. GOLDBERG:**  Yes, Your Honor.  And if I may, in my

response to that argument, the Defense has just, through no fault of his own, grades two issues -- 3C1.1, obstruction of justice; and 1001, which is a false statement.  One is statutory, and one has to do with guidelines.

The United States Supreme Court in 1998, *Brogan v. United States*, 522 U.S. 398, literally the highest court in the land struck down the exculpatory no doctrine.  That's why it was charged, and that's why I presume the U.S. Court accepted the plea.

Nowhere in that opinion by Justice Scalia does it say that a statement has to be under oath.  That's not the holding of the Court, and that is the law in our country.

Now, that is distinguishable for 3C1.1, if we want to discuss that.  Again, that would be a 2-point reduction of the Sentencing Guidelines total offense level, which, based on a Criminal History Category of III, would still put the Defendant at life imprisonment, even if this Court decided it didn't apply under 3C1.1.

**THE COURT:**  So you've echoed what I said in my commentary.  It said the exculpatory no doctrine, which was previously recognized in this circuit, and the case that you cited, Mr. Couch, was repudiated by the Supreme Court in 1998 in the *Brogan* case.

**MR. COUCH:**  As I understand it -- Your Honor, I'd just say, as I understand *Brogan*, the holding there is a witness can

remain silent but cannot swear falsely.  And that's where our argument rises, not that he answered falsely but that he did not swear falsely.

THE COURT:  Well, 1001 doesn't require you to be sworn, that's what many defendants have found, to their chagrin.

MR. COUCH:  Yes, Your Honor.

THE COURT:  Any other possible prejudice that you see here?

MR. COUCH:  No other possible prejudice other than to say that Mr. Gillreath is in custody.  We're certainly not seeking his release.  And even if the Court were inclined to release him pending further development or examination, he's under hold on by the state authorities.

This is a situation, Your Honor, where we see little harm to the Government.  And if it turns out that the evaluation is of no use to the Court, then it's been no harm/no foul.

We do recognize there are people here today.  Those people are also, as I understand it, interested in the state case.  The conclusion of Mr. Gillreath's legal matters with the federal government will not conclude Mr. Gillreath's legal problems.

So I see this as one where little harm comes to the Government but great opportunity to ensure the integrity of the process and the due process to Mr. Gillreath.  That is all I have.

*Donna L. Boland, RPR, FCRR*
*United States Court Reporter*
*One North Palafox Street * Pensacola, Florida  32502*
*850.470.8189*

**THE COURT:** Let me just establish some dates for the record because it's important.

Mr. Gillreath entered his guilty plea on March 20th of this year. The Presentence Investigation Report indicates that it was prepared on May 16th of this year, which was more than a month ago. And the sentencing today is almost three months after the initial plea of guilty.

So in looking at that and looking at the nature of the motion, it appears on its face that your motion is untimely, Mr. Couch, and that's why it was denied. But in addition, in taking Mr. Gillreath's plea I saw no indication that there was any mental condition that might warrant any psychological or psychiatric examination.

And further, from his own statements in the PSI and particularly the investigating probation officer, there is nothing to indicate a history that would somehow present anything that would be truly exculpatory.

So that's why, on the merits as well as on the procedural, it seemed to me that your motion should be and needed to be denied. And fortunately, I have some discretion in that matter and looking at the case law in this circuit, particularly *United States v. Stephens*, a 2008 decision, unpublished, but it's 305 Fed.Appx. 574.

**MR. COUCH:** Your Honor, may I put some other dates on the record?

THE COURT: Yes.

MR. COUCH: Your Honor, we filed our response on June 5th. The Government filed their response to our response on June 6th. I reviewed that response with Mr. Gillreath on June 8th.

THE COURT: All right.

MR. COUCH: And then I filed my motion -- I believe it was last Thursday.

THE COURT: Mr. Goldberg, anything further for the Government?

MR. GOLDBERG: No, Your Honor. I think the Court articulated sufficiently.

THE COURT: Again, your Motion for Reconsideration, Mr. Couch, is denied.

MR. COUCH: Thank you, Your Honor.

THE COURT: If we're ready, we'll move into the sentencing.

MR. COUCH: Yes, sir.

THE COURT: Brandon C. Gillreath, pursuant to your plea of guilty to Count One and Count Five of the superseding indictment charging you in this case, I hereby adjudge you guilty as charged in Count One and Count Five of that superseding indictment.

As I think you know, you'll have an opportunity before I impose sentence this afternoon to speak both personally and

through your attorney about anything at all that you believe I should know.

Before we get to that, I want to ask you about the Presentence Investigation Report that has been prepared by the probation office.

Have you received a copy of that report and have you carefully read it and gone over it with Mr. Couch, your attorney?

**THE DEFENDANT:**  Yes, Your Honor.

**THE COURT:**  Aside from the matters that have been subject to objection by Mr. Couch, have you found anything in the report that has not been corrected that might be in error?

**THE DEFENDANT:**  No, Your Honor.

**THE COURT:**  As far as you can tell, it's accurate?

**THE DEFENDANT:**  Just information left out on my behalf.

**THE COURT:**  Pardon me?

**THE DEFENDANT:**  Just information left out on my behalf due to my past when I was a child.

**THE COURT:**  The matter we just talked about?

**THE DEFENDANT:**  Yes, sir.

**THE COURT:**  All right.  Mr. Couch, if you'd like to speak on his behalf by way of allocution.

**MR. COUCH:**  Your Honor, Mr. Gillreath has cooperated by timely entering an early plea.  He's also been interviewed by

law enforcement and has offered to actively participate in further investigations and has proffered what he might be able to achieve in those relating to the type of offense that he has in this case but also relating to other federal crimes that he has knowledge of.

To our knowledge, the Government has not used his assistance or invited him to participate actively. They've taken the information. We hope that they are analyzing it and reviewing it and determining whether or not he would be useful, but to our knowledge the extent of his cooperation has been to be debriefed and to proffer that he can do.

Mr. Gillreath also provided to me a certificate that I intended to provide to the Court and I neglected to do so. It is just a confirmation that he has just completed a Bible Study course, if I can proffer that to the Court. I've given a copy to the Government.

THE COURT: All right. It will be Defendant's Exhibit 1 for sentencing purposes. Any objection?

MR. GOLDBERG: No, Your Honor.

THE COURT: It's admitted.

(Defendant's Exhibit 1 admitted into evidence.)

MR. COUCH: Your Honor, Mr. Gillreath has spent time reflecting on what has happened, what he has done, how he has affected other people, how they will live the remainder of their lives affected by his actions. He takes full and complete

responsibility for his actions, and he also recognizes that his actions may have encouraged and enticed others to participate in similar wrongful conduct. And he is remorseful, he is cognizant, and he has given indications to myself and to anyone else who will listen that he intends to be different in the future and to do what he can to correct and make amends for what has happened.

There are some -- some objections that we had put in a letter and I -- I think that the ones that were not discussed today that were relating to where -- well, there is one here. Where he would like to make his legal residence address, I think we need to address with the Court because I believe Probation is disagreeing with that. That's in the first -- or the second paragraph of my letter.

THE COURT: Probation has disagreed with that, and it's my understanding that the Bureau of Prisons will not need any updated address for a long time, in all likelihood, so it's not necessary to put this address in here.

What's the Government's position, Mr. Goldberg?

MR. GOLDBERG: Well, Your Honor, based on what the Government thinks would be a just sentence, I don't think it's an issue that the Bureau of Prisons has to be too concerned with at the moment. My hope is that the sentence handed down on the Defendant today will allow the victims to become adults.

THE COURT: Well, there are reasons why this address

should not be disclosed, so I'm going to keep that as a protective and overrule your objection.

MR. COUCH: Your Honor, I think we have established on the record that we object to the sadomasochism enhancement. I have no further argument --

THE COURT: I've overruled that, I think, but I'll do it again. It's overruled.

MR. COUCH: Okay.

MR. GOLDBERG: And, Your Honor, just for the purposes of the Government making the record clear, there's evidence in the PSR that, regarding that enhancement, that is not just a 10- and 11-year-old child, but there's also a five-year-old child who received the same treatment.

THE COURT: Yes.

MR. GOLDBERG: Thank you.

MR. COUCH: Your Honor, I don't think there's anything -- any other objections that were in our letter or any other objections that I am aware of that the Court has not already addressed today.

I would just reiterate that Mr. Gillreath has -- to the extent that any human being can say that they are sorry and say that they want to change and say that they will not offend again, he has done so. Words are cheap, actions are precious, and he will have an opportunity to demonstrate those actions.

We are asking that the Court exercise its discretion

in not sentencing Mr. Gillreath to the maximum.  That 35 years in prison, which I think is the maximum potential sentence that Mr. Gillreath faces, is a sentence far in excess of what is necessary to punish him for his activity, to send a message to the community, and to give him time to conform his conduct and prove that he has conformed his conduct to the requirements of the law, and that a sentence of substantially less would give him an opportunity to reenter our community and reenter our society and show that he can be contributing and that he can be a member who is an asset rather than a detriment.

So for these reasons, Your Honor, we ask for a sentence of far less than the statutory maximum.

**THE COURT:**  Mr. Gillreath, would you like to speak personally?

**THE DEFENDANT:**  I would just like to say that I am truly remorseful and I do -- would like some help and do plan to change, and I just want a second chance, Your Honor.

**THE COURT:**  Mr. Goldberg?

**MR. GOLDBERG:**  Your Honor, when you are imposing sentence, I am going to ask that you consider if there's any greater crime than victimizing the most vulnerable members of our community.

What we have this Defendant is that he didn't just victimize one child, he didn't just victimize two children, we have multiple children who were victimized by the Defendant, and

there's really no persuasive reason to depart in this case.

The Government has a few victim impact statements to place on the record, if I could call them up one by one. As Your Honor is aware and has been disclosed in discovery, although we have two victims whose sexual acts with the Defendant were memorialized on video or photographs, there are other children who were sexually victimized, and that is relevant under 3553(a) when we think of the nature and characteristics of the Defendant as one who rapes and sodomizes multiple children.

I've asked the people who are going to come forward to speak to use their initials to try to keep the record clear of identifying minor victims, so we will do our best to just stick to ages and initials, if that's acceptable to the Court.

**THE COURT:** Yes, it is.

**MR. GOLDBERG:** May I begin?

**THE COURT:** Yes. Do we have a portable microphone?

**MADAM CLERK:** Yes.

**MR. GOLDBERG:** Thank you, Your Honor.

**MR. COUCH:** Your Honor, we offer to reposition ourselves, if that will assist the Court and the victims.

**THE COURT:** How many?

**MR. GOLDBERG:** Four, Your Honor, and they will be short.

**THE COURT:** You may have a seat, Mr. Couch and Mr.

Gillreath.

MR. GOLDBERG: May I bring them up to the lectern?

THE COURT: Yes. Actually, we have a microphone. We don't need the lectern.

MR. GOLDBERG: Your Honor, first we have a gentleman with the initials C.J. He is the father of a minor female, A.J., who was sexually victimized by the Defendant at the age of 10 years old, and she was even witness to some of the sex acts perpetrated by the Defendant on other minors.

If C.J. would like to just place anything on the record, now is his time.

THE COURT: All right, sir.

WITNESS C.J.: My kid is showing some emotional issues with the situation. And halfway through the school year her grads kind of dropped pretty low and she barely passed. I don't know -- you know, we're going to put her in counseling and see if, you know, she can just put it behind her and move on with her life. I just hope that it doesn't affect her when she gets older, that's all.

THE COURT: All right. Thank you.

MR. GOLDBERG: Your Honor, next we have a young lady by the initials D.E. She's the grandmother of A.E., a minor female, who was eight years old when she was sexually victimized by the Defendant. And she, too, witnessed some of the sexual acts that were performed on other victims.

THE COURT:  All right.

MR. GOLDBERG:  And if she wants to just say a few words -- she wrote it down, if she could just read it to the Court.

WITNESS D.E.:  My eight-year-old granddaughter was sexually violated by Brandon Gillreath and has been emotionally affected.  She started last year some of her grades began to drop.

THE COURT:  Okay.

MR. GOLDBERG:  Your Honor, next we have Stephanie Pajor.  She is a counselor at Families First Network, and she was part of the counseling team for, most specifically to the Court's sentencing, A.M.

A.M. was 11 years old -- 10 or 11 during her victimization.  Her victimization was memorialized and can be located in PSR paragraph 64.

And Ms. Pajor is going to speak a little bit about A.M. as well as her siblings.  There were three who were actually -- who had a relationship of sorts with the Defendant.

THE COURT:  Very well.

WITNESS STEPHANIE PAJOR:  I'm the caseworker of the three children involved in this case.  Their current age range from 10, 11, and almost 14.  I am tasked with the heavy burden of speaking for three innocent children.

I have seen firsthand the effects of what has been

done to these children.  I have a child that has a propensity to lash out with violence, slam their head against the wall, they kick out windows, and scale six-foot fences just in an effort to get away from those that are trying to help them.

I have a child that has been Baker Acted three times and placed on psychotropic medications in order to function normally.

I have a child who is desensitized, and because of this is consistently spewing the details of what has been done to them.  A conversation can occur at a dinner table, in line at a supermarket, or during a car ride with other children.  There is a need to get every single detail out, and quickly, no matter who is around.

I have a child that feels absolutely nothing, who refuses to maintain connections with friends or anyone in a position to help them.

I have a child that will trust no one, a child that refuses to believe that things will get better, and a child that has no hope to feel normal again.

I have three children who are not allowed to be together as a family.  Each child is placed in separate homes to the repercussion of what has been so violently done to them.

I have three children who will never be able to share a room even with other family due to the trauma that they have suffered.

Donna L. Boland, RPR, FCRR
United States Court Reporter
One North Palafox Street * Pensacola, Florida  32502
850.470.8189

I have three children who were not afforded the luxury of having a childhood full of innocence, the freedom to be who they wish to become, and the right to feel safe.  What is most important to these children is to feel safe.

The damage to these children is unimaginable and is unjustifiable.  These children will never be the same and their life has been forever stained with the memories of what has occurred.

These children will continue therapy for possibly the rest of their lives.  They will have an uphill battle, and it will be difficult.

I have three children that want to be loved, protected and, again, most importantly, safe.  They trusted the people that were caring for them and claimed to have loved them, and they were hurt.

I now have three children that believe in real live monsters.

I ask this:  Please impose the maximum sentence affordable.

**THE COURT:**  Thank you.

**MR. GOLDBERG:**  Lastly, Your Honor, we have Katherine Burns.  She is the unit manager of Families First Network, and she is part of the counseling process as well as the management process for the five-year-old victim who is mentioned in PSR paragraphs 12 through 46.  And in those paragraphs is certainly

outlined the amount of victimization she endured, and she has a younger brother who Ms. Burns also had contact with.

**WITNESS KATHERINE BURNS:** My role in this case was to find these children a safe and stable environment where they could be raised. These victim children have experienced more in their lifetime than they should have. The abuse these children have endured will be something they struggle with for the rest of their lives.

They should have had parents to protect them from this harm. There should have been someone to be responsible for their care. Instead, this Defendant preyed on the children and took advantage of them in every way possible.

Luckily for these children, they have been saved from this horrible environment of sexual exploitation and have a new place to call home.

These children have yet to show the behavioral and emotional trauma from what they have experienced. Given the known extent of sexual abuse, I am very concerned for what is yet to come for them. These children have voiced that they knew the sexual abuse was wrong. However, unlike other victims, they had no parents willing to stand up and to protect them.

They have night terrors and are afraid of bedrooms. However, I am confident the children can move on with their lives and not be defined by the horrible sexual abuse and exploitation they witnessed and were forced to be a part of.

I ask that you sentence this Defendant to the maximum that you are allowed to by law. Thank you.

THE COURT: All right. Mr. Couch, if you'll come back in front of the clerk's bench, and Mr. Gillreath.

MR. GOLDBERG: Your Honor, the only exhibits that the Government has, they are noncontraband, but I think it's important for the Court to note that these are real children who suffered at the hands of the Defendant.

We have Government's Exhibit A, which is the eight-year-old child victimized by the Defendant; Government's Exhibit B, the ten-year-old child victimized by the Defendant; Government's Exhibit C, the top photo is the 11-year-old victimized by the Defendant; and Government's Exhibit D is the five-year-old on the bottom and her three-year-old brother on the top victimized by the Defendant. I'd like to move these in evidence but under seal.

THE COURT: Any objection?

MR. COUCH: May I see these, Your Honor?

THE COURT: Yes.

MR. COUCH: Defense has no objection, Your Honor.

THE COURT: They're admitted under seal.

**(Government's Exhibits A through D admitted into evidence.)**

MR. GOLDBERG: Thank you, Your Honor. I think the only comment I'd like to make is that you can see that they're just children. We have one of the victims coloring with a

crayon, another one holding a stuffed animal, and one just trying to have a candy cane around Christmastime.

They are real, and they were repeatedly victimized by the Defendant.  This was not a one-time act, it wasn't a drive-by shooting, it wasn't a bank robbery.

I just ask that the Court's sentence reflect the depravity of the crime and act as both a deterrent and retribution as articulated under Section 3553 of Title 18.

THE COURT:  Is the Government seeking restitution in this case?

MR. GOLDBERG:  Your Honor, I've spoken with Ms. Burns, who is the unit manager who just previously testified, and restitution does not appear to be an issue regarding the victim that she wrote in about in the Victim Impact Statement because it is covered by Medicaid at this point.

THE COURT:  So I guess the answer is no?

MR. GOLDBERG:  The answer is no.

THE COURT:  Anything else?

MR. GOLDBERG:  No, Your Honor.

THE COURT:  Mr. Couch, anything else for you?

MR. COUCH:  Your Honor, this is a crime we don't understand.  We can see it, we can appreciate the effects of it.  We don't understand the causes of it.  We don't -- most people cannot conceptualize why it would happen.

But to sentence Mr. Gillreath to 35 years is to

sentence him far beyond that than if he had physically injured the children.

And I'm not insensitive to the fact that the children were physically injured.  I understand that.  I'm not trying to play word games here.

What I'm trying to say is that a period of time that imposes -- punishment that imposes a period of treatment, that imposes a period of wait-and-see as far as whether or not he is changing as he proffers, as he offers, as he suggests that he can do is what is required.

He does have a criminal history, but he has also taken steps to avoid having these children come into court and talk about the crimes.  He has offered to do what he can to help law enforcement find other people that are still doing these sorts of things.

To sentence him to the maximum is to ignore anything that he's done to ameliorate the situation and to send a message that if we catch you, it doesn't matter what you do or say, it doesn't matter whether you help us or not, it doesn't matter if you want to change, it doesn't matter if you want to do this again, we're going to get every last day out of you.

And while that may satisfy a parent or a social worker's gut need, and we certainly understand that, it doesn't seem effective, it doesn't seem efficient, that doesn't seem justice.  We ask for something far less than the maximum of 35

years.

**THE COURT:** Well, this is certainly not a case that's understandable. It's shocking. And I have to say that it probably is the most difficult that I've had to deal with in 30 years of sentencing simply because of the nature of the crime itself.

And unfortunately, our society has become so -- I don't want to say numb, but it's acclimated that we've lost our sense of values and things don't shock us like they used to.

I have carefully reviewed everything in your Presentence Investigation Report, Mr. Gillreath. And subject to any corrections we've made on the record, I find that it is accurate and it's incorporated into and made a part of your sentence as the procedure contemplates.

Now, under the authority of the Sentencing Reform Act of 1984 and the amendments to that act that have become effective since 1984, and in accordance with the policy statements and the guidelines of the United States Sentencing Commission and the interpretation and construction of those guidelines in the underlying law by the courts, including the Supreme Court of the United States, it is the judgment of the Court that you're hereby committed to the custody of the Bureau of Prisons to be imprisoned for a total of 420 months, comprised of 360 months as to Count One, which is a maximum sentence allowed by law, and 60 months as to Count Five, also the maximum

sentence permitted by the statute, with the sentence on Count Five to be served consecutively to the sentence on Count One.

This sentence is below the advisory guideline imprisonment calculated range of life and is imposed pursuant to Guideline 5G1.2(b)and Guideline 5G1.2(d) of the Sentencing Guidelines and in accordance with the statutory maximums.

In determining this sentence, I've considered all of the sentencing factors set out by statute in Title 18, United States Code, Section 3553(a), and I've taken into account the advisory nature of the Sentencing Guidelines themselves.

I conclude that the sentence imposed is reasonable under the circumstances and it is sufficient to comply with those statutory purposes.  The sentence itself is intended to meet the sentencing goals of punishment as well as specific deterrence to keep you from doing this sort of thing again and a general deterrent to keep others who may be inclined to do that from so doing.

It is my recommendation to the Bureau of Prisons that while you're incarcerated you will be enrolled and participate in the sex offender treatment program or such similar program offered through the Bureau of Prisons.

Based upon the financial information provided to me, I find that you don't have the financial ability to pay a fine within the guideline range or below that range, and therefore, I'm waiving the imposition of a fine in your case.

But as the law requires, a special monetary assessment of $100 must be and is imposed on each count for a total of $200, which is due and payable immediately.

Upon release from incarceration, you'll be placed on supervised release for the remainder of your life as to Count One, but for a term of three years as to Count Five, with the terms of supervision to be served concurrently, one with the other. That supervision will be under the standard conditions of supervision adopted by this Court together with the following special conditions:

First: You'll participate in and successfully complete a sex offender treatment program, which may include testing by the treatment provider. You may be required to pay or contribute to the cost of services based upon your financial ability.

Second: In accordance with Title 42, United States Code, Section 16913, and Florida Statute 775.21 and 943.0435, you shall register as a sex offender in each jurisdiction where you reside, may be employed, or may be a student. For your initial registration purposes, you'll also register in the jurisdiction where you're convicted here in Florida.

You shall initially register after completing a sentence of imprisonment with respect to the offense giving rise to this registration. You'll be required to keep that registration current by appearing in person in at least one

jurisdiction in which you're registered and reporting any change in name, residence, employment, or status not later than 48 hours after that change has occurred.

Third:  You shall not be in the presence of minors or have any contact in any form, direct or indirect, including but not limited to personally, by computer, telephone, letter, or through another person, with children under the age of 18 without the approval of the supervising U.S. Probation Officer. Any contact not previously approved must be reported immediately to that probation officer.

Fourth:  Your employment shall be restricted to the district and the division where you reside and are supervised unless previously approved by the Court.

Prior to accepting any form of employment, you shall seek the approval of the supervising U.S. Probation Officer in order for that probation officer to assess the level of risk to the community you may pose if employed in that particular capacity.  Employers shall be informed of your offense of conviction.

Fifth:  Your residence shall be preapproved by the supervising U.S. Probation Officer to assure that you're in compliance with local and county ordinances and state law.

Six:  You shall submit to a search of your person, property, house, residence, vehicle, papers, computer, any other electronic communication or data storage devices or media and

personal effects at any time with or without a warrant by any law enforcement or probation officer with reasonable suspicion concerning unlawful conduct or a violation of a condition of supervision.

Seventh:  You shall not possess or have under your control any material that depicts sexual activities with minors.

Eighth:  You shall not possess or use a computer, cellular telephone, or any device with access to any online service at any time, including employment, at any location without the prior written approval of the supervising U.S. Probation Officer.  This access includes anything through the Internet service provider, bulletin board system, email system, or any public or private computer network system.

You shall permit routine inspection of your computer system or any other computer system maintained at your residence, to include hard drives or media storage materials to confirm adherence to this condition.  This inspection shall be no more intrusive than is absolutely necessary to ensure compliance with conditions of your supervision.

You shall consent to the installation of any hardware or software systems designated to monitor your computer activities on any computer you may be authorized to use, including one at employment.  And further, you may be required to contribute to the cost of this monitoring based upon your financial ability at the time.

Ninth:  You shall participate in a program of mental health counseling and treatment.

And I think that completes the sentencing for Mr. Gillreath.

Under the Eleventh Circuit's procedure, counsel, do either of you have any objections regarding either my findings of fact or conclusions of law regarding the sentence I've imposed that need to be amplified further?

**MR. COUCH:**  Nothing that hasn't been already stated, Your Honor.

**THE COURT:**  Mr. Goldberg?

**MR. GOLDBERG:**  No, Your Honor.  The Government would merely move to dismiss any and all remaining counts pursuant to the agreement.

**THE COURT:**  All the remaining counts other than Counts One and Five remaining with Mr. Gillreath are hereby dismissed on motion from the Government, the motion is granted.

Mr. Gillreath, you're advised that you do have the right to appeal from the sentence and judgment that I've imposed.  Any appeal must be filed within 14 days.

If you're unable to afford the cost of an appeal, you may apply for leave to appeal in forma pauperis, which, if granted, will allow you to take appeal without any cost to you.

I'm sure Mr. Couch will discuss that matter with you before he leaves today.  If you feel you have grounds for

appeal, upon request the clerk will immediately file notice of appeal on your half.  I remind you again that any appeal has to be filed within 14 days.

THE DEFENDANT:  Thank you, Your Honor.

THE COURT:  Let's take a short recess and then proceed with the other sentencing in five minutes.

*(Proceedings concluded at 3:15 p.m.)*

--------------------

*I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.  Any redaction of personal data identifiers pursuant to the Judicial Conference Policy on Privacy are noted within the transcript.*


*s/Donna L. Boland*                    *8-15-2013*
*Donna L. Boland, RPR, FCRR*           *Date*
*Official Court Reporter*